(122 App. Div. 535.)

## MEROLLA v. LANE.

(Supreme Court, Appellate Division, First Department.   December 6, 1907.)

1. TRUSTS—POWER OF SALE OF TRUSTEE—EXECUTION OF POWER—CONVEYANCE OF TRUST PROPERTY.

Testator devised an undivided one-fourth interest in certain property to each of his four children. One of these children by deed conveyed his interest to another of such children, who in turn conveyed such interest back to the grantor, in trust for the trustee's three children during their lives, with remainder to the issue of such children, and, in default of issue, to the trustee in fee simple. The deed of trust also invested the trustee with power within his discretion to convey in fee simple so as to vest absolute ownership in the purchaser, and to reinvest the proceeds upon the same trusts as the property was subject to. Subsequently the trustee joined with the other three children of the original testator in a conveyance of the entire property with covenants of quiet enjoyment and general warranty, and without reciting the trust. At the time of such conveyance, there were no children of any of the cestuis que trustent, but subsequent to such conveyance a child was born to one of them. *Held*, that the conveyance in which the trustee joined was a conveyance of an undivided three-fourths of the entire property owned by the other grantors and the individual interest of the trustee in the undivided one-fourth, which was merely a vested remainder therein, and which was subject to be and which was actually divested by the birth of his grandchild, and was not an execution of the power of sale given him by the trust deed, and hence did not pass the title of the property held by him thereunder.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 399.]

2. TENANCY IN COMMON—RIGHTS OF CO-TENANTS—ADVERSE POSSESSION.

Where a conveyance of property vested in the grantee title to an undivided three-fourths thereof, leaving an undivided one-fourth in one of the grantors as trustee for third persons, the grantee became a tenant in common with the trustee and the cestuis que trustent, and possession by him of the entire property was not adverse to such tenants in common, in the absence of ouster.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Tenancy in Common, §§ 42–52.]

Appeal from Special Term.

Action by Louis Merolla against Margaret Lane. From a judgment entered upon a decision of the court at Special Term dismissing the complaint, plaintiff appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Max L. Schallex, for appellant.
Claude V. Pallister, for respondent.

INGRAHAM, J. The defendant agreed to sell to the plaintiff certain real property, the title to which the plaintiff refused to accept, upon the ground that the defendant could not give a marketable title. This action was then brought for a specific performance of the contract. The court found that the defendant had a marketable title and dismissed the complaint. The property was owned by one Elihu Phinney, who died on February 9, 1863, leaving a last will and testament by which he devised the property to his four surviving children. One of these children, Henry F. Phinney, and his wife, conveyed an undivided fourth interest in this property to Annie W. Phinney,

his sister, by a deed dated the 30th of December, 1863, which was duly recorded on April 5, 1864; whereupon the grantee, Annie W. Phinney, by a conveyance dated the same day, which, reciting the conveyance to her from Henry F. Phinney and wife, conveyed the said property to the said Henry F. Phinney in trust, to receive the rents and profits of the property conveyed and to apply the rents, incomes, and profits, one-third part thereof to each of his three children during their lives, and upon the death of each child, as to the one-third part held for each child, to assign, transfer, and convey the same in fee simple absolute as to the real estate and in absolute ownership as to the personal property to the issue then living of such child, but, in default of issue, to the survivors, the issue of any one child to take the parent's share; and, in the event of failure of issue of all three children, then to convey the said property to Henry Frederick Phinney, to his own use and benefit forever, with power to convey and transfer the fee of the said property to the beneficiaries, and with the further power, within his discretion, from time to time whenever he should deem it expedient and proper, "to sell, grant and convey in fee simple absolute as to the real property and as to the personal property so as to vest the absolute ownership thereof in the purchase and upon such terms as to price and credit and if on credit as to security as to him shall appear judicious, any property real or personal which shall be held by him upon trust to receive and apply the rents and profits thereof as herein mentioned, and upon any such sale grant or conveyance to reinvest the proceeds in any way he may think judicious such proceeds when so reinvested to be held respectively upon the same trusts as the property from whose sale, grant or conveyance they arose and subject to the same powers and to the same limitations over as such property would have been if not so sold, granted or conveyed." And containing the following declaration:

"I further declare that the true construction of this deed in that respect is that it divides the property thereby granted and conveyed into three parts to be held on separate trusts and that the trust as to each part ceases on the death of the child above named of said Henry Frederick Phinney to whose use its rents and profits are directed to be applied and such part is then to belong absolutely to the issue of such child if any living, if none then to the living brothers and sisters of such child and the issue of its deceased brothers and sisters in the proportions mentioned in this deed, and if none such then to Henry Frederick Phinney so that the absolute ownership of no part of the property is suspended for more than one life now in being the trust as to each part may also be terminated under the discretionary powers given as above mentioned even before the decease of the respective cestui que trust."

And this conveyance was duly recorded on April 5, 1864.

There was here created a trust for the life of the three children of Henry, with a remainder to the issue of such children, and, in default of issue, with a remainder to Henry Frederick Phinney. By indenture dated the 22d of February, 1867, Henry Frederick Phinney and wife united with the other owners of the estate of Elihu Phinney in a conveyance of the property in question to Edward Birmingham. This was the usual form of a conveyance of the grantor's individual property without reciting the trust, or without purporting to exercise the power, with a covenant of quiet enjoyment and a general cove-

-nant of warranty. This was acknowledged with the usual form of acknowledgment for an individual conveyance. The consideration was stated to be $1,800, and the conveyance was recorded on March 26, 1867. There was evidence that Susan Cooper Irving, a daughter of Henry Frederick Phinney, and her son, were alive at the time of the trial. It also appeared that on the 28th of January, 1905, there was presented to the Supreme Court a petition of Susan Cooper Irving, formerly Susan Cooper Phinney, in which she set out these various conveyances by which a trust was created for her benefit, alleging that on the 21st of October, 1874, the petitioner was married to Jacob Sutherland Irving, who died on the 1st day of April, 1881, leaving one son, Henry Sutherland Irving, who was born on the 2d of August, 1875; that on the 28th day of October, 1875, Henry Frederick Phinney died without having released, assigned, transferred, or conveyed to either of his said children for whom this property was held in trust any of the rights or interests under said share so held in trust for each of them under the deed of trust, leaving, him surviving, Susan Cooper Irving, the petitioner, Frederick Phinney, and Charles John Phinney, his three children for whom the trust was created, his next of kin and heirs at law, and leaving a last will and testament, which was duly admitted to probate, whereby he appointed one Charles K. McHarg his successor in the trust created in the said deed of trust; that on the 30th day of July, 1903, McHarg died without having exercised any of the powers as trustee under the said deed of trust; that on the 14th day of December, 1892, Frederick Phinney, one of the children of Henry Frederick Phinney, died unmarried and without issue; and that on the 6th day of November, 1902, Charles John Phinney, one of the children of Henry Frederick Phinney, died unmarried, without issue, and without having assigned, transferred, or conveyed any of the property that vested in him and the share or interest of said Charles John Phinney under said deed of trust. And upon this petition an order was entered appointing Henry Sutherland Irving, the only son of the petitioner, as trustee to execute the trusts and powers remaining unexecuted under and by virtue of this deed of trust of Annie W. Phinney to Henry Frederick Phinney, dated January 13, 1864.

There was no evidence that Henry Frederick Phinney received the consideration named in this deed in the conveyance to Birmingham in 1867. If this petition can be taken as proof of the facts stated therein, it would appear that at the time of the conveyance to Birmingham there were no children of either of the beneficiaries of the trust, and Henry Frederick Phinney therefore was vested with a remainder in the property which was subject to be divested by the birth of a child to either of his children, and that such remainder was not so divested until the 2d of August, 1875, when Henry Sutherland Irving was born. Upon the birth of Henry Sutherland Irving, August, 1875, he became vested with a remainder in all of this property held in trust. Henry Frederick Phinney died on the 28th of October, 1875, after this remainder had vested in his grandson. He appointed as his successor in trust McHarg, who died on the 30th of July, 1903.

The title of the defendant to the property must rest upon one of two propositions: First, that the conveyance to Birmingham, in which Henry Frederick Phinney and his wife joined, was an exercise of the power of sale contained in the trust deed; or, second, adverse possession. The conveyance to Birmingham did not recite the trust, nor did the grantors or either of them purport to exercise the powers or to convey anything, except their individual interests. The conveyance is a simple bargain and sale, with a covenant of quiet enjoyment and a general covenant of warranty. There can be no question but that Henry Frederick Phinney had a vested remainder at the time he executed this conveyance which he could convey, and which would entitle him to the fee of the property upon the death of his three children without issue.

In Mutual Life Ins. Co. v. Shipman, 119 N. Y. 324, 24 N. E. 177, it was held that the provision of the Revised Statutes in relation to the execution of a power in trust, by which "every instrument executed by the grantee of a power, conveying an estate or creating a charge, which such grantee would have no other right to convey or create, unless by virtue of his power shall be deemed a valid execution of the power, although such power be not recited or referred to therein," was not intended to change the then existing rule; that whenever, in addition to a power, the grantor is also invested with other independent interest or powers, whether legal or equitable, with respect to the same property, the rule of the statute does not apply. In that case the testator died leaving, him surviving, a widow and seven children, and owning real estate which he devised to his wife so long as she should remain his widow, and upon her death or marriage to the children born to him by her. The widow was made executrix of the will, and was authorized and empowered to mortgage, lease, and dispose of such property for the purpose of carrying into effect the provisions of the will. After the death of the testator, the widow married again, and subsequently executed a mortgage in her individual name to secure the repayment to the mortgagee of a loan of money. The mortgage contained no reference to the character of the mortgagor, as executrix, or to the power to mortgage contained in the will; but appeared, on its face, to be the individual mortgage of the widow. The question in that case was whether the mortgage was an execution of the power conferred by the will to mortgage the whole estate, or was to be restricted to the individual interest which the mortgagor had as dowress in such lands. It was held that, but for the provisions of the Revised Statutes relating to powers, there could be but little doubt that it would be held to convey only such interest as the mortgagor possessed in her individual right (citing Perry on Trusts, § 511; Sugden on Powers [3d Am. Ed.] 477; 4 Kent's Commentaries [11th Ed.] p. 371), and it was said, referring to the statute:

"The rule was founded in reason and good sense, and was intended to provide that whenever a single power exists, under which a grantor may convey or mortgage real estate, his conveyance is attributed to the exercise of the power actually possessed by him; but that whenever, in addition to a power, he is also invested with other independent interests or powers, wheth-

er legal or equitable, with respect to the same property, under the authority of either of which he may lawfully act, the rule of the statute should not apply."

And it was held that, a woman having a right of dower and a power to sell or mortgage real property, a conveyance or mortgage which does not purport to be in execution of the power only related to the individual interests of the mortgagor or grantor. It was then further said:

"Although this right, while unassigned, did not give her a legal estate in the land, it is now well settled that it was a legal interest and constituted property which was capable in equity of being sold, transferred, and mortgaged by the dowress, and liable to be reached by creditors in payment of her debts. * * * The real question under the statute would seem to be whether the mortgagee had a transferable interest in the mortgaged premises —one which would be available in the hands of the transferee as security for a debt. If so, then her interest was sufficient to bring her within the reason and meaning of the statute. * * * It is quite obvious that an interest by a grantor in real estate, whether legal or equitable, that is effectual to create a transfer of property, is equally persuasive as any other in furnishing a motive or reason for making or receiving a particular conveyance, and would furnish an equally strong circumstance from which the imputation of a legal intent might be derived. Both equitable and legal interests in real estate are valuable and capable of transfer and are equally effective in determining the intent with which a particular conveyance is made.

And this case was followed in Weinstein v. Weber, 58 App. Div. 112, 68 N. Y. Supp. 570, affirmed 178 N. Y. 94, 70 N. E. 115.

Certainly, in this case, a vested remainder in real property, which, as the record then stood, would entitle the grantor to the fee upon the death of his three children, was as substantial an interest in the property as an unadmeasured right of dower. The fact that the trustee joined with other persons, who were owners of interests in this property, in a conveyance of it which on its face conveyed only the grantor's individual interest, was not an execution of the power of sale, and the title of the property that was held by him in trust did not pass under the conveyance.

Upon the question of the adverse possession, I do not think a title was established which a purchaser was bound to take. Under the conveyance, the grantee would be entitled to three-fourths of the property, and he thereby became tenant in common with Henry Frederick Phinney as trustee. The trust as to one-third terminated in 1892, as to another one-third, in 1902, and as to another one-third it had not terminated at the time of the trial. The possession under this conveyance was found to have commenced in 1870, when the trust still existed as to all the property. It does not appear when either of these cestuis que trustent were born, but they were all apparently alive on the 30th of January, 1864, when the trust deed was executed. Generally, the possession of one tenant in common is the possession of his co-tenant, and to justify a claim of adverse possession there must be express evidence of ouster of the tenant in common against whom adverse possession is claimed. There is no evidence of such ouster, or any claim that the title held was adverse to the trust estate. It does appear that a new trustee has been appointed who claims an interest in the property, and, in view of this claim and uncertainty as to the

possession as adverse to the trust estate, I do not think that the title was marketable.

· The judgment should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.